RALPH SERRECCHIA *vs.* ATLANTIC MILLS.

MARCH 26, 1952.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a petition for specific compensation under the workmen's compensation act, general laws 1938,

chapter 300, article II, §12. The petitioner claims that his right arm has been rendered stiff so as to be useless, which injury resulted from an accident arising out of and in the course of his employment with respondent. After a hearing in the superior court the trial justice denied the petition, and a decree to that effect was thereafter · duly entered. From that decree petitioner has appealed to this court on the grounds that it is against the law and that there is no legal evidence to support the decision.

It is undisputed that on January 27, 1947, while working at a certain machine in respondent's mill, petitioner's right arm was accidentally caught between two ton rollers thereof; that the arm was severely crushed to a point above the elbow as it was drawn through the rollers; and that notwithstanding treatment at different institutions and by various doctors his arm became stiff from the hand to the shoulder. There is nothing in the record to indicate that petitioner, who is receiving compensation for total incapacity, was malingering.

At the time of petitioner's injury in 1947, art. II, §12, of the act provided that "Where any bodily member or portion thereof has been rendered stiff so as to be useless, compensation in accordance with the above schedules shall be paid as if the member or portion thereof had been severed completely." We had occasion to consider the same section in *Vick* v. *Aubin*, 73 R. I. 508, and in *Steele* v. *Darlington Fabrics Corp.*, 78 R. I. 272. In reading those cases it is to be noted that whatever we said about that section in the *Vick* case was merely to show that on the facts then before us petitioner's *contention* under consideration was clearly beyond the scope of the statute as it was written. In the *Steele* case, where the factual situation was quite different, we construed section 12 to the extent of holding that the word "useless," when read with its context, "was used in the sense that, from a functional aspect, the body is no better off with the member than it would be if the member had been severed," meaning thereby that a petitioner

was not entitled to *specific* compensation unless it appeared from competent and credible evidence that in all probability the functional uselessness from stiffness of the member was both total and permanent.

In the instant case it was clearly established by uncontradicted and unimpeached evidence that petitioner lost all functional use of the arm through stiffness from shortly after the accident on January 27, 1947 to January 8, 1951, when the hearing of the present petition was concluded in the superior court. The respondent's sole contention is that by force of the act and numerous decisions of this court we are precluded from disturbing the decision of the trial justice, as there was legal evidence tending to show that the existing total loss of functional use of the arm through stiffness was not permanent. Since the honesty of the petitioner was in no way questioned, the validity of that contention depends entirely upon the medical testimony in the case.

Doctors Herbert E. Harris and William N. Hughes, the former an orthopedic surgeon and the latter a neurologist and psychiatrist, testified for the petitioner, while Doctors Louis A. Sage and Thomas L. Greason, who respectively specialized in the same branches of medicine, appeared as witnesses for the respondent. It is obviously impractical to refer to their testimony in detail. However, we have carefully examined all such testimony and find that, except for some slight reluctance to express an opinion as to *an absolute certainty* and apart from a suggestion by Dr. Greason that the administration of a certain drug might possibly be "attempted," all the doctors agreed that they knew of no treatment which, in its probable result, would give petitioner any functional use of his arm in the future. The soundness of respondent's contention therefore depends upon whether the testimony of Dr. Greason with reference to the use of the suggested drug by the petitioner for a period not exceeding six months constituted legal evidence in the peculiar circumstances of record.

Doctor Greason testified that on December 17, 1949, which was the only time that he examined petitioner, he found him suffering from a traumatic neurosis of the hysterical type; that petitioner's arm was then unquestionably stiff and useless; that his present condition, which remained unchanged, "might" be benefited by the use of Amytal injections; and that the restoration of petitioner's confidence in the use of the arm could be "attempted" in the course of such treatment with the following possible results: "One, *no benefit;* two, use; three, some status in between." (italics ours) The questions and answers that we are about to quote in connection with such prognosis are significant respecting the doctor's opinion as to the curative effect of the Amytal treatment. "Q. Have you any way of knowing ahead of time what result you were to obtain? A. I wish I did. Q. You have no way? A. I have no way. Q. Is it because of that reason you recommend this treatment be followed out? A. I would recommend that it be attempted."

Granting that in Dr. Greason's branch of medicine the use of Amytal injections was a recognized method of treatment in some cases, it is clear, however, that in the unusual circumstances of the instant case he did not and would not testify that such treatment, if "attempted," offered any probable expectation of improvement to petitioner's arm. In our opinion the testimony under consideration was so purely speculative that it was not legal evidence of probative force on the issue of whether the stiffness of petitioner's arm was permanent and therefore should have been disregarded by the trial justice. In the absence of any competent legal evidence, either from direct testimony or by reasonable inference, showing that the uselessness of petitioner's arm was not permanent, and since all the legal evidence established that the functional loss of use of the arm from stiffness was both total and permanent in so far as medical science could foretell without delving into mere possibilities, it is our judgment that

petitioner is entitled to specific compensation as provided in the act for such injury.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a decree in accordance with this opinion.

*William S. Flynn, Christopher J. Brennan,* for petitioner.

*Donald A. Kingsley, Arnold Williamson, Jr.,* for respondent.